1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMIE COLLINS, a single person,

Plaintiff,

v.

CITY OF DUVALL, a Washington State
municipality, CORPORAL CHAD
DAUGHERTY, individually and in his official
capacity, LIEUTENANT GENE SANDERS,
individually and in his official capacity, CHIEF
OF POLICE GLENN MERRYMAN, individually
and in his official capacity,

Defendants.

No. CV06-0998 MJP

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

This matter comes before the Court on motion for summary judgment by Defendant City of

Duvall and individual Defendants Chad Daugherty, Gene Sanders and Glenn Merryman.  Having

reviewed the papers and pleadings submitted by the parties, the Court GRANTS Defendants' motion.

Because the Court concludes that the officers did not violate Plaintiff's federal constitutional rights,

the individual Defendants are entitled to qualified immunity for Plaintiff's federal claims.  The Court

further concludes that Defendants either did not violate Plaintiff's state constitutional rights, or that a

reasonable officer would not have known that their conduct was unlawful.  Therefore, they are entitled

ORDER - 1

1    to statutory immunity for Plaintiff's state claims.  For the same reasons, Defendant City of Duvall is

2    entitled to summary judgment on Plaintiff's municipal liability claims.

3           The reasons for the Court's order are set forth below.

4                                        **Background**

5           On June 7, 2003, Duvall police received a call from Heidi Collins, a records clerk for the

6    Redmond Police Department.  (Daugherty Decl. ¶ 5.)  Calling from a hotel room in Monroe,

7    Washington, Heidi asked to speak with an officer about family issues.  (Id., Ex. A, at 1.)  Duvall

8    dispatch forwarded the information to Corporal Chad Daugherty, a Duvall police officer, who

9    returned Heidi's call.  (Id.)  Heidi informed Corporal Daugherty that she was having problems with her

10   husband, Plaintiff Jamie Collins, a Bellevue police officer.  (Id.)  Heidi claimed that the day prior,

11   Plaintiff had been intimidating and verbally abusive, and that his behavior had carried over into the

12   next morning.  (Id. at 2.)  After discussing Plaintiff's behavior with her brother, Heidi fled from her

13   home to the hotel, where she contacted the police.  (Id. at 3.)

14          Corporal Daugherty's interview with Heidi lasted approximately forty minutes.  (Id. at 1.)

15   After the interview, Corporal Daugherty contacted Duvall Police Chief Glenn Merryman to brief him

16   on the issue.  (Id. at 1; Merryman Decl. ¶ 5.)  Thereafter, Corporal Daugherty and Lieutenant Gene

17   Sanders, another Duvall police officer, traveled to Heidi's hotel to conduct a more thorough interview.

18   (Daugherty Decl., Ex. A, at 1; Sanders Decl., Ex. A, at 1.)  In the second interview, Heidi signed a

19   sworn statement describing Plaintiff's abusive behavior in detail.  (Daugherty Decl., Ex. B.)

20          In her written statement and during her interviews, Heidi claimed that her husband had become

21   increasingly violent towards her over the past two years.  Heidi described one incident from January

22   21, 2003, when Plaintiff pinned her to the bed, placed his hands on her throat, and threatened to kill

23   her.  (Daugherty Decl., Ex. A, at 1.)  Heidi stated that the incident occurred after she refused to have

24   sex with Plaintiff, (Daugherty Decl., Ex. B, at 5), and she believed that Plaintiff truly intended to kill

25   her.  (Daugherty Decl., Ex. A, at 4.)  In her struggle to break free from her husband, Heidi believed

ORDER - 2

1   that she broke her thumb.  (Id. at 1.)  When Plaintiff released her, Heidi fled from the bedroom to the

2   garage to hide.  (Id. at 4.)  She stated that while she was hiding, she considered running to a

3   neighbor's house for help, but decided against it fearing that her husband might shoot the neighbors.

4   (Id. at 4-5.)  She also considered calling 911, but declined fearing Plaintiff's reaction.  (Id. at 1.)

5       Heidi remembered a similar incident from March 2002, when Plaintiff pinned her to the bed

6   and threatened her.  (Daugherty Decl., Ex. B, at 6.)  She could not remember the specific threats, but

7   stated that after the incident, she had moved from the bedroom to the living room where Plaintiff

8   confronted her with a firearm.  (Daugherty Decl., Ex. A, at 6-7.)  She also talked about Plaintiff's

9   violent mood swings and penchant for breaking objects and damaging walls.  (Id. at 6.)  According to

10  Heidi, Plaintiff acted deliberately to intimidate her, constantly using profanity, racking the slide of his

11  pistol in bed, and sleeping with a loaded firearm at bedside.  (Id. at 2.)

12      Heidi also remembered Plaintiff commenting on the widely publicized David Brame case in

13  Tacoma in which an officer killed his wife.  (Id. at 7.)  Plaintiff intimated that if he were to kill Heidi,

14  he would not be so obvious, and instead he would use a sniper rifle and kill her while she ate lunch.

15  (Id.)  Heidi claimed that Plaintiff was a sniper for the SWAT team.  (Daugherty Decl., Ex. B, at 7.)

16  On at least one occasion, Heidi slept with a knife under her bed for protection.  (Browne Decl., Ex. A,

17  at 11.)  She also stated that Plaintiff had told her that if she ever tried to leave him and take part of his

18  retirement money, he would have grounds to justifiably kill her.  (Daugherty Decl., Ex. C, at 2.)

19      After the second interview, Corporal Daugherty and Lieutenant Sanders escorted Heidi to a

20  different hotel in Everett, and returned to Duvall.  (Daugherty Decl., Ex. A, at 6.)  The officers

21  discussed the matter with Chief Merryman, and they all agreed that there was probable cause to arrest

22  Plaintiff for felony harassment and fourth degree assault, a gross misdemeanor.  (Merryman Decl. ¶ 8.)

23  Chief Merryman contacted the on-call prosecutor at the King County Prosecutor's Office, and he was

24

25

ORDER - 3

advised that they had a strong case for felony harassment and fourth degree assault.[1]  (Id. at ¶ 7.)
Immediately thereafter, Chief Merryman ordered the officers to arrest Plaintiff.  (Id.)

At approximately 4:00 a.m. on July 8, 2003, the three officers, joined by officer Chris
Daugherty, traveled to Plaintiff's residence to effect the arrest.  (Collins Decl. ¶ 7; Daugherty Decl.,
Ex A, at 7.)  One of the officers rang the doorbell and Plaintiff opened the door.  (Collins Decl. ¶ 7.)
Plaintiff invited the officers into his home but they declined.  (Id.)  Responding to the officers, Plaintiff
stepped outside onto the front porch and was immediately arrested.  (Id.; Daugherty Decl., Ex. A, at
7.)

On June 26, 2006, Plaintiff filed suit against the City of Duvall and Officers Daugherty,
Sanders and Merryman in Washington State Superior Court, alleging violations of his state and federal
constitutional rights.  (Compl. at 4-8.)  Defendants removed the action to Federal District Court on
July 11, 2006.  (Dkt. No. 1.)  Defendants have moved for summary judgment on all of Plaintiff's
claims.  The individual Defendants seek summary judgment, claiming immunity from suit for Plaintiff's
federal claims under the doctrine of qualified immunity, and immunity from suit for Plaintiff's state
claims under RCW 10.99.070.  Defendant City of Duvall also seeks summary judgment on the issue of
municipal liability.

**Analysis**

I.    Summary Judgment Standard

Summary judgment is not warranted if a material issue of fact exists for trial.  Warren v. City
of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).  The underlying

---

[1] Although Plaintiff asks the Court to strike Chief Merryman's discussion with the prosecutor
as hearsay, the Court declines to do so.  The Court may consider a hearsay statement in determining
whether the officers had probable cause to arrest because the relevant inquiry is what the arresting
officers knew at the time, not whether the statement was true.  See Woods v. City of Chicago, 234
F.3d 979, 985-87 (7th Cir. 2000) (holding that hearsay statements are admissible not for the truth, but
for the effect that the statements had on the officers).

1   facts are viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Indus.</u>

2   <u>Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the

3   evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v.</u>

4   <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The party moving for summary judgment has the

5   initial burden to show the absence of a genuine issue concerning any material fact. <u>Adickes v. S.H.</u>

6   <u>Kress & Co.</u>, 398 U.S. 144, 159 (1970). Once the moving party has met its initial burden, the burden

7   shifts to the nonmoving party to establish the existence of an issue of fact regarding an element

8   essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex</u>

9   <u>Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot

10  rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. <u>Id.</u>

11  at 324.

12  II.      <u>Federal Qualified Immunity for the Individual Officers</u>

13       The Supreme Court has established a two part test for evaluating questions of qualified

14  immunity on summary judgment. <u>See</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). First, the court

15  must determine whether, in the light most favorable to the party alleging the injury, the officer's

16  conduct violated a constitutional right. <u>Id.</u> If the court determines that no constitutional violation

17  occurred, there is no further inquiry and the defendant is entitled to qualified immunity. <u>See id.</u>

18  However, if the court determines that a constitutional violation did occur, the next step is to determine

19  whether the constitutional right was clearly established. <u>Id.</u> A right is clearly established when, in

20  light of the specific context of the case, it would be clear to a reasonable officer that his conduct was

21  unlawful in the situation he confronted. <u>Id.</u> at 201-02. If the court determines that the right was not

22  clearly established, then the defendant is entitled to qualified immunity. <u>Id.</u> at 202.

23       Plaintiff alleges two violations of his Fourth Amendment right to be free from unreasonable

24  seizure. First, Plaintiff argues that the officers violated his constitutional rights when they arrested him

25

1   for felony harassment without probable cause.  Second, Plaintiff argues that the officers violated his

2   constitutional rights when they arrested him in his home without a warrant.

3          A.      Arrest Without Probable Cause

4          Plaintiff does not argue that the officers lacked probable cause to arrest him for fourth degree

5   assault.  Furthermore, although a Washington State Superior Court found that there was probable

6   cause to arrest Plaintiff on that charge, (Stellwagen Decl., Ex. A, at 3), Plaintiff does not challenge

7   that ruling here.  Although Plaintiff's failure to (1) address probable cause for the fourth degree assault

8   charge; and (2) challenge the state court's probable cause finding; is likely dispositive here, because

9   the parties have not addressed these issues in their motion briefing, the Court will perform an

10  independent probable cause analysis and decide the probable cause issue on its merits.

11         "[P]robable cause exists when, under the totality of the circumstances known to the arresting

12  officers, a prudent person would have concluded that there was a fair probability that the suspect had

13  committed a crime."  Peng v. Mei Chin Penghu, 335 F.3d 970, 976 (9th Cir. 2003).  "In establishing

14  probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a

15  crime, but must independently investigate the basis of the witness' knowledge or interview other

16  witnesses."  Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001) (citing

17  Fuller v. M.G. Jewelry, 950 F.2d 1437, 1444 (9th Cir. 1991)).  However, "[a] sufficient basis of

18  knowledge is established if the victim provides facts sufficiently detailed to cause a reasonable person

19  to believe a crime had been committed and the named suspect was the perpetrator."  Peng, 335 F.3d at

20  978 (quoting Fuller, 950 F.2d at 1444).

21         Plaintiff was arrested on charges of felony harassment and fourth degree assault.  Pursuant to

22  Washington state law, a person commits harassment when: (1) without lawful authority, the person

23  knowingly threatens to cause bodily injury immediately or in the future to the person threatened; and

24  (2) the person, by words or conduct, places the person threatened in reasonable fear that the crime will

25  be carried out.  RCW 9A.46.020(1).  Similarly, although the elements are not statutorily defined, a

ORDER - 6

person commits fourth degree assault by: (1) an attempt, with unlawful force, to inflict bodily injury on another; (2) an unlawful touching with criminal intent; or (3) putting another in apprehension of harm whether or not the actor intends to inflict or is incapable of inflicting that harm. See State v. Aumick, 126 Wn.2d 422, 426 n.12, 894 P.2d 1325 (1995).

Plaintiff argues that the officers did not have probable cause to arrest him for felony harassment because the officers improperly relied on Heidi Collins' inconsistent allegations and they should have performed an additional investigation. Plaintiff challenges the consistency of several of Heidi's statements, including her claims that: (1) Plaintiff knocked holes in the walls of their home; (2) Plaintiff was a SWAT team sniper; (3) Plaintiff choked her on January 21, 2003; (4) she injured her thumb in the January incident; (5) she contacted her brother about the January incident; and (6) she slept with a knife for protection. Plaintiff argues that these statements are untrue, and that the officers could have discovered this by performing further investigation. Plaintiff argues that had they done so, they would have discovered these inconsistencies in Heidi's statements, which would have prompted them to investigate her allegations even further. In support, Plaintiff cites a line of cases for the proposition that an officer may not rely solely on the statement of a witness to establish probable cause. See, e.g., Fuller, 950 F.2d at 1444.

However, further investigation was unnecessary for two reasons. First, most of the excerpts from Heidi's statements cited by Plaintiff are not inconsistent. Defendants have persuasively refuted the alleged inconsistencies. (See, e.g., Reply at 3-6, 11 n.7, and declarations cited therein.) Furthermore, to the extent Heidi's statement is inconsistent with facts later discovered, such inconsistency is irrelevant and immaterial to the determination of probable cause. See Gramenos v. Jewel Cos., 797 F.2d 432, 439 (7th Cir. 1986) ("Probable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth, that matters."); see also Peng, 335 F.3d at 979 (holding that inconsistencies in incidental facts are immaterial to a finding of probable cause).

1    Second, the cases cited by Plaintiff are inapposite because they involve situations in which the

2    officer came upon information conflicting with the witness' statement that should have put him on

3    notice that further investigation was warranted.  See, e.g., Merriman v. Walton, 856 F.2d 1333 (9th

4    Cir. 1988) (holding the officer did not have probable cause to arrest a suspect for kidnapping based

5    solely on a report by a witness because the officer had learned that the victim had returned home,

6    could not remember the incident, and a statement by the suspect contradicted the witness' version of

7    events).  In the present case, nothing placed the officers on notice that further investigation was

8    necessary.  Because Heidi did not contradict herself during the interviews, the officers had no reason

9    to question her credibility.  See United States v. Harness, 453 F.3d 752, 754 (6th Cir. 2006) (holding

10   that an eyewitness account is sufficient for probable cause unless the officer has reason to believe "that

11   the eyewitness is lying, did not accurately describe what he had seen, or was in some fashion mistaken

12   regarding his recollection of the confrontation"); Gramenos, 797 F.2d at 439 ("A 'prudent' officer

13   may balk . . . if the person leveling the accusation is babbling or inconsistent.").

14   Furthermore, the surrounding circumstances supported Heidi's allegations.  First, Heidi only

15   contacted the police after fleeing her home to a hotel.  Next, she gave a detailed statement describing

16   threats and injuries that established the elements of harassment and fourth degree assault.  The

17   sufficiency of her account was confirmed by the on-call King County Prosecutor which the officers

18   relied upon.  Finally, the officers knew that Heidi worked for the Redmond Police Department, and

19   that she was familiar with domestic violence investigations.  They also knew that Heidi's employment

20   placed her in a unique position to know the consequences of making false allegations in her sworn

21   affidavit.  Each of these factors supported the credibility of Heidi's statements and obviated the need

22   for further investigation.

23   Plaintiff also argues that Heidi's statement was insufficient to establish probable cause because

24   of the lapse of time between the January incident and her report to police in July.  In support of his

25   argument, Plaintiff cites a Seventh Circuit case holding that "[a] 'prudent' officer may balk if the

1    person claiming to be an eyewitness strolls into the police station and describes a crime from long

2    ago. . . .” <u>Gramenos</u>, 797 F.2d at 439.  However, <u>Gramenos</u> specifically states that a prudent officer

3    “<u>may</u> balk” if the person describes a crime from long ago.  In the present case, despite the delay in

4    reporting the incidents, Heidi provided a sufficiently detailed account of Plaintiff’s conduct to cause a

5    reasonable person to believe a crime had been committed.  In two lengthy interviews, Heidi recounted

6    a long established pattern of abuse by Plaintiff.  She also provided a detailed description of the January

7    2003 incident when Plaintiff threatened to kill her and injured her thumb.  In addition, Heidi had a

8    good explanation for her delay in reporting the incident.  Heidi stated that she was terrified of what

9    Plaintiff might do if she ever reported anything.  (Sanders Decl., Ex A, at 4; Browne Decl., Ex. A, at

10   5.)  She was also afraid that no one would believe her because Plaintiff was a police officer and he had

11   previously stated that he would tell everyone that she was crazy if she ever reported anything.

12   (Sanders Decl., Ex A, at 4; Browne Decl., Ex. A, at 5.)

13        Because a reasonable officer would have no reason to distrust the veracity of Heidi’s

14   allegations, her statements are sufficient to establish probable cause to arrest Plaintiff for felony

15   harassment and fourth degree assault.  First, Heidi alleged that Plaintiff had threatened to kill her and

16   that she believed the threats.  Based on her statement, Heidi’s fears were reasonable under the

17   circumstances because she described an escalating pattern of abuse by Plaintiff.  Therefore, Heidi’s

18   statement established both elements of felony harassment: (1) Plaintiff had knowingly threatened her

19   with bodily injury in the future; and (2) Plaintiff’s pattern of abuse placed Heidi in reasonable fear that

20   the crime would be carried out.  Second, Heidi alleged that Plaintiff pinned her to the bed and injured

21   her thumb in January.  Heidi’s allegation was sufficient to satisfy the elements of assault because it

22   establishes both:  (1) an attempt to inflict bodily injury on another; and (2) an unlawful touching with

23   criminal intent.  Heidi’s description of Plaintiff’s pattern of abuse also satisfies the elements of an

24   assault because it demonstrates that Plaintiff placed Heidi in apprehension of future harm.

25

1    Accordingly, the officers had probable cause to arrest Plaintiff for felony harassment and fourth degree

2    assault.

3           B.      Warrantless In-Home Arrest

4           The Fourth Amendment prohibits police from making a nonconsensual entry into a suspect's

5    home in order to effect a warrantless arrest.  See Payton v. New York, 445 U.S. 573, 576 (1980).  As

6    the Supreme Court explained in Payton:

7           The Fourth Amendment protects the individual's privacy in a variety of settings.  In
            none is the zone of privacy more clearly defined than when bounded by the
8           unambiguous physical dimensions of an individual's home - a zone that finds its roots in
            clear constitutional terms . . . [therefore] the Fourth Amendment has drawn a firm line
9           at the entrance to the house.

10   Id. at 589-90.  However, the Supreme Court has upheld the warrantless arrest of a defendant who was

11   standing in the frame of her doorway because she had voluntarily exposed herself to public view.

12   United States v. Santana, 427 U.S. 38, 42 (1976).  For the same reason, the Ninth Circuit has held that

13   a warrantless arrest is proper when a suspect voluntarily opens the door of his dwelling in response to

14   a noncoercive knock by the police.  See United States v. Vaneaton, 49 F.3d 1423, 1426 (1995), cert.

15   denied, 516 U.S. 1176 (1996).

16          Plaintiff argues that the police needed a warrant because he was arrested in his home, not in a

17   public place.  When evaluating whether an arrest occurs in-home or in a public place, it is the location

18   of the arrested person, and not the arresting agents, that is determinative.  See United States v.

19   Johnson, 626 F.2d 753, 757 (9th Cir. 1980), aff'd, 457 U.S. 537 (1982).  Plaintiff states that he was

20   inside his home when the officers arrived, and opened the door in response to the doorbell.  (Collins

21   Decl. ¶ 7.)  Plaintiff claims that he felt obligated to comply when the officers asked him to step

22   outside.  (Id.)  Plaintiff argues that he was compelled to leave his home, and therefore his arrest

23   outside his home is equivalent to arrest in his home.  In support of his argument, Plaintiff cites a line of

24   cases holding that a person's liberty is restrained, in violation of the Fourth Amendment, when the

25   police conduct "would have communicated to a reasonable person that he was not at liberty to ignore

ORDER - 10

1    the police presence and go about his business." See, e.g., Florida v. Bostick, 501 U.S. 429, 437

2    (1991).

3              However, Plaintiff's warrantless arrest was not a constitutional violation.  Plaintiff cannot

4    escape the fact that he exposed himself to public view, and therefore warrantless arrest, when he

5    answered the door.  Plaintiff does not allege that the officers acted deceptively or coercively when they

6    approached him.  He admits in his declaration that he voluntarily opened the door in response to the

7    doorbell.  (Collins Decl. ¶ 7.)  It was not until after Plaintiff voluntarily opened the door and exposed

8    himself to the public that Plaintiff claims he was coerced by the officers to exit his home.  At that

9    point, it was too late for Plaintiff to claim coercion because, by opening the door, he exposed himself

10   in a public place.  See Vaneaton, 49 F.3d at 1427.  Under clear Ninth Circuit precedent, such exposure

11   is sufficient to satisfy the Fourth Amendment's requirement for a warrantless arrest.  See id.

12             Because the Court concludes that the officers' conduct did not violate Plaintiff's federal

13   constitutional rights, there is no need to continue with the Saucier qualified immunity analysis.  The

14   officers are entitled to qualified immunity on Plaintiff's federal claims.

15   III.    Municipal Liability for Plaintiff's Federal Claims

16             Although the City of Duvall is not entitled to qualified immunity, it is not liable for Plaintiff's

17   federal claims unless Plaintiff establishes a violation of his federal constitutional rights.  See Monell v.

18   New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  Because the Court concludes that

19   the officers' conduct did not violate Plaintiff's federal constitutional rights, Defendant City of Duvall is

20   entitled to summary judgment on Plaintiff's federal claims.

21

22

23

24

25

IV.    State Statutory Immunity for the Individual Officers

Because all of Plaintiff's state law claims are predicated on the lawfulness of Plaintiff's arrest, Defendants have claimed statutory immunity under RCW 10.99.070.[2]  The statute provides as follows:

> A peace officer shall not be held liable in any civil action for an arrest based on probable cause, enforcement in good faith of a court order, or any other action or omission in good faith under this chapter arising from an alleged incident of domestic violence brought by any party to the incident.

Although Defendants have moved for summary judgment on all of Plaintiff's claims, neither party has devoted significant discussion to the issue of statutory immunity for Plaintiff's state law claims.  However, Washington courts have held that the standard for statutory immunity under RCW 10.99.070 is the same as the standard for qualified immunity under federal law.  See Estate of Lee v. City of Spokane, 101 Wn. App. 158, 2 P.3d 979 (2000) (holding that there was no difference "between the question of good faith [in RCW 10.99.070] and the question of federal immunity").  Therefore, the Court must determine: (1) whether Plaintiff's constitutional rights were violated by the arrest; and (2) if Plaintiff's rights were violated, whether the right was clearly established such that a reasonable officer would have known that the arrest was unlawful.  See Saucier, 533 U.S. at 201-02.

As with his federal claims, Plaintiff alleges two violations of his state constitutional right to be free from intrusions into his private affairs.  See Wash. Const. Art. I, § 7.  First, Plaintiff argues that the officers violated his state constitutional rights when they arrested him without probable cause.  Second, Plaintiff argues that the officers violated his state constitutional rights when they arrested him in his home without a warrant.

A.    Arrest Without Probable Cause

Under Washington law, the standard for probable cause is the same as the federal standard. See State v. Potter, 156 Wn.2d 835, 840, 132 P.3d 1089 (2006).  Therefore, Plaintiff's state law

---

[2] State statutory qualified immunity should not be confused with state common law qualified immunity.  The latter has a different analysis and is inapplicable in domestic violence situations.  See Gurno v. Town of LaConner, 65 Wn. App. 218, 227-28, 828 P.2d 49 (1992).

1    claims based on arrest without probable cause fail because the officers had probable cause to arrest

2    Plaintiff on both charges.

3           B.     Warrantless In-Home Arrest

4           The standard for warrantless arrest inside a suspect's home is different in Washington than the

5    federal standard.  "In Washington, absent exigent circumstances, the police are prohibited from

6    arresting a suspect while he or she is standing within the doorway of the residence."  State v. Solberg,

7    122 Wn.2d 688, 697, 861 P.2d 460 (1993).  Consequently, although Plaintiff's opening of the door

8    was sufficient to satisfy federal constitutional requirements for a warrantless arrest, it is insufficient to

9    satisfy the requirements of article 1, section 7, of the Washington State Constitution.  See id. at 697,

10   n.7.  However, Washington courts have held that absent evidence of coercion, a warrantless arrest of

11   an individual that has voluntarily exited the home is lawful.  See Solberg, 122 Wn.2d at 699-701.

12          Plaintiff argues that he was coerced into leaving his home by the officers when they arrived at

13   his home at 4:00 a.m.  Although Defendants have proffered considerable evidence opposing Plaintiff's

14   assertion, the Court may not weigh the strength of the evidence and must construe all facts in favor of

15   Plaintiff.  Accordingly, the Court must consider Plaintiff's statement that he "felt obligated to step

16   outside and did not feel free to resist the officers' commands," (Collins Decl. ¶ 7), as true for purposes

17   of summary judgment.  Therefore, despite the weakness of Plaintiff's evidence, Plaintiff has established

18   a genuine issue of material fact sufficient to avoid summary judgment on the issue of coercion.

19   Because there is a factual dispute concerning whether Plaintiff was coerced to step outside of his

20   home, the Court cannot determine whether a constitutional violation occurred when the officers

21   arrested Plaintiff without a warrant.

22          However, even if Plaintiff's state constitutional rights were violated, the officers are entitled to

23   statutory qualified immunity under the second prong of the Saucier analysis.  Plaintiff's right to be free

24   from in-home arrest without a warrant was not 'clearly established' because it would not have been

25   clear to a reasonable officer that the arrest was unlawful.  First, the officers did not have access to

1   Plaintiff's internal thought processes, and therefore they could not perceive his internal feeling of

2   coercion.  Instead, the officers had to rely on Plaintiff's external, objective manifestations to assess his

3   state of mind.  Accordingly, from a reasonable officer's perspective, Plaintiff's conduct suggested that

4   his decision to step outside was voluntary.  Plaintiff initiated contact with the officers by inviting them

5   into his home.  In addition, had the officers accepted his invitation into the home, they could have

6   arrested him immediately without raising any constitutional concerns.  See State v. Cyrus, 66 Wn.

7   App. 502, 832 P.2d 142 (1992).  Second, the officers knew that Plaintiff was a police officer, and that

8   he was familiar with police procedure and his constitutional rights.  It would also be reasonable to

9   conclude that, as a police officer, Plaintiff was less likely than an ordinary citizen to be intimidated or

10  surprised by police officers standing at his door.  From a reasonable officer's perspective, this

11  information suggests that Plaintiff voluntarily stepped outside of his home.  Therefore, Plaintiff's right

12  was not clearly established because it would not have been clear to a reasonable officer that Plaintiff

13  was coerced into stepping outside of his home.

14      The Supreme Court has stated that qualified immunity protects "all but the plainly incompetent

15  or those who knowingly violate the law."  Hunter v. Bryant, 502 U.S. 224, 229 (1991).  Because the

16  Court concludes that a reasonable officer would not have known that Plaintiff's arrest was unlawful,

17  Defendant officers have satisfied the second prong of the Saucier analysis.  Therefore, the officers are

18  entitled to statutory immunity under RCW 10.99.070 on all of Plaintiff's state law claims.

19  V.      Municipal Liability for Plaintiff's State Claims

20      Unlike federal law, Washington applies the doctrine of respondeat superior to municipalities.

21  See Lutheran Day Care v. Snohomish County, 119 Wn.2d 91, 126-27, 829 P.2d 746 (1992).

22  Accordingly, municipalities in Washington enjoy the immunity of their agents.  Id.  Therefore, because

23  the Court concludes that the officers are entitled to statutory immunity under RCW 10.99.070 for

24  Plaintiff's state claims, Defendant City of Duvall is also entitled to summary judgment on Plaintiff's

25  state claims.

ORDER - 14

1

**Conclusion**

2        The officers' conduct in this case did not violate Plaintiff's federal constitutional rights.  The

3  officers had probable cause to arrest Plaintiff for felony harassment and fourth degree assault, and the

4  warrantless arrest occurred in a public place.  Furthermore, the officers did not violate Plaintiff's state

5  constitutional rights to the extent Plaintiff alleges unlawful arrest without probable cause.  Although

6  the Court cannot at this stage determine whether the officers violated Plaintiff's state constitutional

7  rights when they arrested him without a warrant, the Court is satisfied that a reasonable officer would

8  not have known that the arrest was unlawful.  Accordingly, Defendants are entitled to summary

9  judgment on the issues of qualified immunity, statutory immunity and municipal liability.  Because the

10  Court concludes that Defendants are either immune from suit or not subject to liability, the Court

11  ORDERS that all of Plaintiff's claims are dismissed with prejudice.

12        The Clerk is directed to send copies of this order to all counsel of record.

13        Dated:   March 28, 2007.

14

15                                    s/Marsha J. Pechman
                                      Marsha J. Pechman
16                                    United States District Judge

17

18

19

20

21

22

23

24

25

ORDER - 15